Joyce A. ZAGORSKI and Laura
Velasquez, Plaintiffs–
Appellants,

v.

MIDWEST BILLING SERVICES, IN-
CORPORATED, Arthur Eklund, and
William O. Eklund, Defendants–Appel-
lees.[1]

No. 97–1677.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1997.

Decided Nov. 5, 1997.

---

1. The American Collectors Association, Inc. has filed a brief amicus curiae urging affirmance.

O. Randolph Bragg (argued), Horwitz & Associates, Chicago, IL, Carla O. Andres, Vele & Andres, Evansville, WI, for Plaintiffs–Appellants.

David M. McDorman (argued), McDorman & Gillen, Madison, WI, for Defendants–Appellees.

Michael J. von Mandel, Von Mandel & Von Mandel, Chicago, IL, Basil J. Mezines, Stein, Mitchell & Mezines, Washington, DC, for Amicus Curiae.

Before FLAUM, RIPPLE and ROVNER, Circuit Judges.

PER CURIAM.

Joyce Zagorski and Laura Velasquez filed this action against Midwest Billing Services, Inc. ("Midwest") alleging that it had violated certain provisions of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"). 15 U.S.C. §§ 1692–1692o. Ms. Zagorski and Ms. Velasquez later amended their complaint to include as additional defendants Arthur and William Eklund, the sole shareholders of Midwest. Midwest admitted some of the allegations of the complaint, and the parties eventually stipulated to the entry of judgment against defendants in the amount of $100 plus costs. The plaintiffs then moved for an award of attorney's fees. That motion was denied; this appeal followed. Because the decision of the district court is contrary to the established law of this circuit, we reverse the judgment and remand for a determination of appropriate attorney's fees.

A.

The plaintiffs commenced this action after they received letters from Midwest concerning the status of their accounts at two Wisconsin hospitals. The gravamen of the complaint was that Midwest had violated the Act by failing to disclose that it was attempting to collect a debt and that any information disclosed would be used for that purpose. The complaint further alleged that the debt collection letter violated the Act because Midwest failed to provide the required validation notice and because Midwest was an unlicensed debt collection agency. Midwest admitted all these allegations, but argued that its unlicensed status did not amount to a per se violation of the Act. Midwest also consented to the immediate entry of judgment in the amount of $100.

In an amended complaint, the plaintiffs not only realleged the claims set forth in their earlier effort but also alleged that Arthur Eklund, president of Midwest, and William O. Eklund, a shareholder in Midwest, violated the Act by knowingly sending collection communications that did not comply with the Act and by knowingly incorporating and operating an unlicensed collection agency for the purpose of collecting unpaid medical accounts. The defendants admitted the claims on which they had admitted liability earlier but otherwise denied liability. They again consented to the entry of judgment against them in the amount of $100. The parties then submitted a stipulation for the entry of judgment against the defendants in the amount of $100 plus costs. The plaintiffs later filed a petition for attorney's fees.[2]

The district court denied the petition for attorney's fees. It took the view that the determination of an appropriate award of attorney's fees under the FDCPA (15 U.S.C.

**2.** The damages provisions of the FDCPA are found at 15 U.S.C. § 1692k. The portion providing for the award of attorney's fees to successful litigants reads as follows:

> § 1692k. Civil Liability
> (a) Amount of Damages
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable in an amount equal to the sum of

> ...
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

**1166**

§ 1692k(a)(3)) is governed by the same standard that has been used for determining attorney's fees awards pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. It then noted that, in the context of making that determination under § 1988, the Supreme Court has said that the nature of relief awarded to a prevailing party bears on the propriety of awarding fees. *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992). Thus, reasoned the district court, in some circumstances, even a party who formally prevails should receive no attorney's fees at all. Accordingly, continued the district court, a victorious plaintiff may receive no attorney's fees if the plaintiff's recovery is merely technical or *de minimis.* The court then noted that, in applying *Farrar,* we have adopted a three-factor test to determine if relief is merely technical or *de minimis:* (1) the difference between the judgment recovered and the judgment sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served by the litigation. *See Johnson v. Lafayette Fire Fighters Ass'n,* 51 F.3d 726, 731 (7th Cir. 1995). After a consideration of these factors, the district court concluded that the only reasonable fee was no fee.

### B.

■ In reviewing the decision of a district court as to whether attorney's fees ought to be awarded, we employ the deferential abuse of discretion standard. *Johnson,* 51 F.3d at 731. Our cases make clear, however, that, when a district court commits an error of law, that error constitutes an "abuse of discretion." *Spanish Action Comm. of Chicago v. City of Chicago,* 811 F.2d 1129, 1134 (7th Cir.1987). Here, we must hold that the district court abused its discretion because its decision is based on a view of the law different from that established by our cases. This court has held previously that the award of attorney's fees to plaintiffs for a debt collector's violation of "any provision" of the FDCPA is mandatory. *See Tolentino v. Friedman,* 46 F.3d 645, 651 (7th Cir.), *cert. denied,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also Mace v. Van Ru Credit,* 109 F.3d 338, 344 n. 3 (7th Cir.1997).[3] The plaintiffs have brought a "successful action" under the FDCPA and thus are entitled to a "reasonable attorney's fee." 15 U.S.C. § 1692k(a)(3).

■ On remand, the district court must determine a reasonable attorney's fee. In undertaking such a task, the methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988 will serve as a useful guide. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Indeed, in *Tolentino,* we noted that district courts should use this methodology when calculating an award of attorney's fees under the Fair Debt Collection Practices Act. *Tolentino,* 46 F.3d at 652.[4] We further noted that the Supreme Court has stated that " 'the most critical factor' " in determining the reasonableness of the award " 'is the degree of success obtained.' " *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574 (quoting

---

3. The Second Circuit has also held that the award of attorney's fees to a successful plaintiff in an FDCPA action is mandatory. *See Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 28 (2d Cir.1989); *Emanuel v. American Credit Exch.,* 870 F.2d 805, 809 (2d Cir.1989). In addition, the Fourth and the Third Circuits have held that an award of attorney's fees under the FDCPA is mandatory in the absence of bad faith conduct on the part of the plaintiff. *See Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 628–29 (4th Cir.1995); *Graziano v. Harrison,* 950 F.2d 107, 114 & n. 13 (3d Cir.1991). It is also worth noting that the First Circuit has held that the award of attorney's fees to a successful plaintiff in an action under the Truth in Lending Act ("TILA") is mandatory. The language of the attorney's fees provision in TILA is identical to the parallel provision in the FDCPA. *See de Jesus v. Banco Popular de Puerto Rico,* 918 F.2d

232, 233–34 (1st Cir.1990). *But see Johnson v. Eaton,* 80 F.3d 148, 151–52 (5th Cir.1996) (holding that district court's decision to award no attorney's fees to plaintiff who prevailed in FDCPA action was proper where plaintiff proved only a technical violation of the Act). In *Mace,* 109 F.3d at 344 n. 3, we specifically declined to reconsider our holding in *Tolentino* and noted our agreement with the Second Circuit.

4. In addition to our circuit, two other circuits have held that district courts should look to the Supreme Court precedent pertaining to the calculation of reasonable attorney's fees under 42 U.S.C. § 1988 when determining the amount of an attorney's fee award pursuant to 15 U.S.C. § 1692k(a)(3). See *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 629–30 (4th Cir.1995); *Graziano v. Harrison,* 950 F.2d 107, 114 (3d Cir.1991).

*Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941). Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked.[5] In this regard, we note that our Chief Judge recently has written that "the cumulative effect of petty violations ... may not be petty, and if this is right then the mere fact that the suit does not result in a large award of damages or the breaking of new ... ground is not a good ground for refusing to award any attorneys' fees." *Hyde v. Small,* 123 F.3d 583, 585 (7th Cir. 1997). We also believe that this reasoning must be considered in determining the degree of success obtained in fixing the amount of the fee.[6] Finally, we also note that we have stated that, "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Tolentino,* 46 F.3d at 652; *see also Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993). "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino,* 46 F.3d at 653. Of course, the trial court, who "enjoy[s] a decided advantage over appellate courts in calculating fee awards," *Car-*

*roll v. Wolpoff & Abramson,* 53 F.3d 626, 628 (4th Cir.1995), retains a great deal of discretion in fixing the amount of the final award.

C.

Because the decision of the district court is not in conformity with the law of the circuit, we reverse its judgment and remand for further proceedings consistent with this opinion. The appellants may recover their costs in this court.

REVERSED and REMANDED.

---

5. In determining the degree of "success" a plaintiff has obtained, this court has utilized a three-part test gleaned from Justice O'Connor's concurrence in *Farrar,* 506 U.S. at 121–22, 113 S.Ct. at 578. Under this test, "we look at the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation." *Cartwright v. Stamper,* 7 F.3d 106, 109 (7th Cir. 1993). Other circuits have also adopted this formula for evaluating the "success" a plaintiff has achieved in civil rights litigation. *See Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir. 1997); *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996); *Jones v. Lockhart,* 29 F.3d 422, 423–24 (8th Cir.1994). These cases illustrate that "success is not measured only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Morales,* 96 F.3d *at* 365. *But see Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 630 (4th Cir.1995) (holding that, in FDCPA case where no equitable relief was awarded, salient

measure of plaintiff's success was small amount of damages recovered from defendant for its technical statutory violation).

6. In the context of civil rights litigation, several courts have considered the deterrent effect of the litigation to be an important consideration when evaluating the "degree of success" obtained by a particular plaintiff. *See City of Riverside v. Rivera,* 477 U.S. 561, 575, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (Brennan, J., plurality opinion); *Phelps v. Hamilton,* 120 F.3d 1126, 1132 (10th Cir.1997); *Hashimoto v. Dalton,* 118 F.3d 671, 678 (9th Cir.1997); *O'Connor v. Huard,* 117 F.3d 12, 18 (1st Cir.1997); *Morales v. City of San Rafael,* 96 F.3d 359, 364–65 (9th Cir.1996); *see also Koopman v. Water Dist. No. 1 of Johnson County, Kansas,* 41 F.3d 1417, 1420 (10th Cir. 1994) (despite an award of nominal damages, plaintiff's lawsuit was successful because it put employer on notice that it must provide its employees with constitutionally adequate pretermination and posttermination hearings), *cert. denied,* —— U.S. ——, 116 S.Ct. 420, 133 L.Ed.2d 337 (1995).