Silva v. Nat'l Telewire Corp.          CV-99-219-JD   12/12/01
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Michael S. Silva

     v.                              Civil No. 99-219-JD
                                     Opinion No. 2001 DNH 218
National Telewire Corporation,
d/b/a Priority Service Network


                            O R D E R


     The plaintiff, Michael S. Silva, brought a class action

under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C.A. § 1692, et seq., against Priority Service Network

("PSN").  Silva and the class have settled their claim with PSN

and now seek an award of attorneys' fees, costs, and expenses

pursuant to 15 U.S.C.A. § 1692k(a)(3).  PSN acknowledges that the

plaintiffs are entitled to an award of reasonable attorneys' fees

but challenges the attorneys' hourly rates and the amount of time

claimed.


                          Background

     The class action complaint was filed on May 19, 1999, by

Michael S. Silva, represented by Christopher J. Seufert, of

Franklin, New Hampshire, and O. Randolph Bragg, of Chicago,

Illinois.  Silva alleged that PSN violated the FDCPA in its debt

collection efforts on behalf of Sears by failing to provide a

validation notice and by mailing letters implying a false sense of urgency. The court denied PSN's motion to dismiss in which PSN argued that Silva had not properly alleged that PSN was a debt collector within the meaning of the FDCPA.

While Silva's motion for class certification was pending, PSN made an offer of judgment to him. Silva interpreted the offer as having been made to each member of the class and accepted on behalf of the class. PSN objected to Silva's acceptance on behalf of the class and moved to compel Silva to accept the offered judgment as to himself only. The court ruled that because no class had been certified, Silva could not accept on behalf of the class. The court also ruled that because the motion for class certification was pending, it would be inappropriate to force Silva to settle his individual claim.

Silva proposed to certify a class of persons with addresses in New Hampshire to whom PSN sent letters like the one sent to Silva, for debts that were primarily personal or for family or household purposes, during the year prior to the filing date of the complaint, and whose letters were not returned as undeliverable. PSN objected to class certification, arguing that the proposed class did not satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a). PSN also argued that a class could not be maintained under Rule 23(b)(2), for injunctive

2

relief, because it had already stopped sending the letters.  The court certified a class under Rule 23(b)(3).

The plaintiff class moved for summary judgment in December of 2000.  In April of 2001, the parties notified the court that an oral settlement had been reached and asked that all proceedings be stayed.  Following a fairness hearing, the parties' joint motion for settlement was granted.

Under the terms of the parties' settlement agreement, PSN was to pay $1,000 to Silva and $6,500 to the class, for each class member's proportionate share up to $50 each.  After seventy-five class members claimed their shares, an amount of $2,750 remained as unclaimed funds.  That amount was paid as a cy pres award to Legal Advice & Referral Center, Inc. in Concord, New Hampshire.  The class then moved for an award of attorneys' fees, costs, and expenses.

## Discussion

Section 1692k(a)(3) provides that in a successful action to enforce FDCPA liability, the defendant is also liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court."  An award of reasonable attorneys' fees to a prevailing plaintiff is mandatory.  See Zagorski v. Midwest Billing Servs., Inc., 128 F.3d 1164, 1166 (7th Cir. 1997).  There

3

is no dispute that the plaintiffs were successful and are entitled to an award of reasonable fees and costs in this case. The dispute centers on what constitutes reasonable fees.

Courts generally use the lodestar method to calculate reasonable attorneys' fees under the FDCPA. See, e.g., Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994). Under the lodestar method, "the trial judge must determine 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). In determining a lodestar, "the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." Id. Once the lodestar is determined, the court may further adjust the amount by considering other factors including the novelty or difficulty of the issues, the skill necessary to provide the legal services, the preclusion of other employment by counsel, and the amount involved and the result obtained. Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337, n.3 (1st Cir. 1997).

The plaintiff class is represented by Christopher J.

4

Seufert, Seufert Professional Association, Franklin, New Hampshire, and O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, Illinois. Seufert states in his declaration that he spent 81.3 hours in representing Silva and the class and asks that the fees award for his time be based on an hourly rate of $200. Bragg claims 139.2 hours, before the time spent preparing the application for fees, with an hourly rate of $300. In addition, the request for an award of fees includes 84.4 hours spent on this case by Bragg's law clerks, Michael Kelly and Bethany Hilbert. The plaintiffs ask that the law clerks' time be paid at $85 per hour.

The total amount of fees sought for Seufert's representation is $16,260.00. Seufert also shows litigation expenses of $50. The total amount of fees sought for Bragg's representation is $41,760.00, and the total for the law clerks' time is $7,208.00. Bragg claims costs and litigation expenses of $5,107.02. These figures represent time spent before the application for fees was prepared.

PSN argues that the hourly rates claimed by Seufert and Bragg are excessive and challenges some of the time spent. PSN also argues that the amount of fees sought by the plaintiffs is excessive in light of the factors used to assess the reasonableness of fees. In response, the plaintiffs contend that

5

PSN's active defense caused the plaintiffs' lawyers to spend more time and they defend the rates and time charged.

A.  Reasonable Hourly Rates

Seufert claims an hourly rate of $200.  He is a member of a three-person firm in Franklin, New Hampshire, engaged in a litigation practice.  The parties rely on "The 2000 Desktop Reference on the Economics of Law Practice in New Hampshire," published by the Law Practice Management Section of the New Hampshire Bar Association ("Desktop Reference") to show the prevailing rates in New Hampshire.  The median hourly rate for a lawyer in a three-person firm in Merrimack County in a community with a population between 25,000 and 70,000 and seventeen years experience is $150.

Seufert states in his declaration that "[t]he current hourly rate for my services if [sic] $200.00 per hour."  He does not explain whether his claimed rate is based on his fee charged in the present case, or whether he has charged and been paid at that rate by other clients.  See, e.g., Hagan v. MRS Assocs., Inc., 2001 WL 531119, at *2 (E.D. La. May 15, 2001).  The affidavit of Edward K. O'Brien, stating that the hourly rate in this court for a lawyer with Seufert's experience would range between $175 and $225 per hour does not provide any basis for his opinion other

6

than his own experience. Since O'Brien's opinion appears to contradict the information in the Desktop Reference, without explanation, it is not persuasive. Based on the information in the record, a reasonable rate for Seufert's professional services is $150 per hour.

Bragg claims an hourly rate of $300 for himself and $85 per hour for his two law clerks. Bragg is a member of a law firm located in Chicago, Illinois, and his law clerks were law students. An hourly rate of $300 is beyond the scale provided in the Desktop Reference for most categories. Bragg includes a copy of an order from the Northern District of Illinois in a FDCPA case, dated June 21, 2001, in which his fees were awarded based on a rate of $300 per hour. PSN challenges the hourly rate charged by Bragg, asserting that a rate of $150 per hour would be more in line with reasonable fees in New Hampshire.

The plaintiffs acknowledge that Bragg's rate of $300 is at the high end of New Hampshire rates but argue that the nonlocal rate is applicable because Bragg's skill and experience in litigating FDCPA class action cases were not available in New Hampshire. Attorneys' fees may be based on a nonlocal rate if it was reasonable for the plaintiff to hire a nonlocal specialist. See Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983); see also Yankee Candle Co. v. Bridgewater Candle Co., LLC, 140 F. Supp. 2d

7

111, 123 (D. Mass. 2001); <u>Guckenberger v. Boston Univ.</u>, 8 F. Supp. 2d 91, 103-04 (D. Mass. 1998). A plaintiff reasonably hires a nonlocal specialist when there are no attorneys available in the local area, with the required skill, to handle the case. <u>See</u> <u>id.</u>

The plaintiffs here argue that Bragg, a recognized specialist in consumer class action litigation, was a reasonable choice for this case because Seufert could not find a New Hampshire attorney to handle the case. <u>See, e.g.</u>, <u>Talbott v. GC Servs. Ltd. Partnership</u>, 191 F.R.D. 99, 105 (W.D. Va. 2000). (discussing Bragg's expertise). The plaintiffs further contend, supported by O'Brien's affidavit, that FDCPA litigation is extremely rare in this district. Seufert's communications with other lawyers, including one who has handled similar litigation in the Boston area, indicate reluctance to undertake a consumer class action in this case. Therefore, as the plaintiffs have shown that it was reasonable to seek Bragg as co-counsel and that his nonlocal hourly fee of $300 is reasonable, the court will use $300 per hour for the time reasonably spent by Bragg on professional work and $85 per hour for the time reasonably spent by the law clerks.

8

B.  <u>Time Reasonably Spent</u>

The plaintiffs concur that .8 hours of time entered on May 1, 2000, was an error.  That time should be deducted from the law clerks' time.

PSN challenges the fees charged for time when counsel were traveling.  Generally, travel time is not compensated at a full professional rate, and in this case, fifty percent of the professional rate would be reasonable.  <u>See</u> <u>Furtado v. Bishop</u>, 635 F.2d 915, 922 (1st Cir. 1980); <u>see also</u> <u>Cruz</u>, 34 F.3d at 1161; <u>Cooper v. U.S. R.R. Retirement Bd.</u>, 24 F.3d 1414, 1417 (D.C. Cir. 1994).  In addition, mixed entries that include several activities present a particular challenge in assessing reasonable fees and may be subject to exclusion.  <u>See</u> <u>Furtado</u>, 635 F.2d at 922.

Seufert includes travel in undifferentiated entries with other activities.  Although the undifferentiated entries might be deducted, instead the court estimates that 5 hours of the time was spent traveling.  Therefore, 5 hours of Seufert's time will be compensated at $75 per hour, rather than the professional rate of $150 per hour.

Bragg also charged his full professional rate for travel time.  Bragg's travel entries include 12.3 hours for travel to New Hampshire for a scheduling conference on October 27, 1999,

9

11.4 hours for travel to Newark, New Jersey, on March 7, 2000, for the defendant's deposition, and 10.9 hours on August 20, 2001, for travel to New Hampshire and back for the fairness hearing. Bragg's entries in some instances describe work activities within the travel times but do not specify the time spent on work. Although the undifferentiated time entries might be stricken entirely, the court will estimate that of the 34.6 hours listed as travel with some work activity, 5.2 hours involved work activity and will be compensated at Bragg's full professional rate while 29.4 hours were for travel only and will be compensated at fifty percent of the professional rate.

PSN argues that the time spent by Seufert researching the FDCPA and communicating with other attorneys to locate co-counsel was excessive and not reasonable. Seufert's billing records show approximately 17 hours logged for research (excluding travel time) before Bragg joined as co-counsel. Seufert's letter to Attorney John Roddy, included in plaintiff's Appendix D, indicates that Seufert had sued Sears for two FDCPA violations before taking Silva's case. Therefore, approximately 17 hours of research on the FDCPA, without an explanation of the purpose, appears to be excessive and unreasonable, and the time will be reduced by 4 hours.

Seufert's records indicate that he contacted attorneys

10

Stephen Fine, Peter Wright, Francis Murphy, and John Roddy in an effort to locate co-counsel. Based on the communications included in Appendix D, it appears that Seufert was familiar with the FDCPA but was looking for co-counsel who would be willing to undertake a class action suit against PSN and Sears. Seufert billed for approximately 7 hours of time spent contacting other counsel about the case. While communication among lawyers about a case may be a beneficial source of information and Seufert's efforts to find co-counsel may have been laudable, 7 hours, billed at a full professional rate, is excessive. The time Seufert spent communicating with other lawyers will be reduced by 2 hours.

Seufert's records indicate that he spent approximately 6 hours reviewing drafts of the complaint that were prepared by Bragg. The complaint is six pages long. The attached exhibits are an additional four pages that are copies of PSN internet material and a copy of the letter sent to Silva. Six hours appears to be excessive time spent on that project, which should have been accomplished in no more than 4 hours.

PSN objects to Seufert's entry of 2 hours to review the deposition of Stanley Broder. The deposition was taken by Bragg on March 7, 2000. Bragg billed for 2.3 hours to take the deposition. The court agrees that 2 hours of review time was

11

excessive, particularly without any explanation as to the importance of the deposition or the purpose of Seufert's review. Seufert's time will be reduced by 1 hour.

PSN also objects to the amount of time Seufert and Bragg billed for the settlement process. Seufert's bills attribute 10 hours to "Finalize Settlement and Order on Distribution, Letter to Client." At the same time, Bragg and his law clerks logged approximately 13.5 hours preparing and reviewing settlement documents. The court agrees that without further detail as to what activities were accomplished during the 10 hours billed by Seufert, his time is not reasonable. That entry will be reduced by 6 hours.

Bragg's entries, however, present detail of the work done. It appears that both Bragg and one of his clerks researched and prepared the settlement agreement on the same day logging a total of 4.4 hours on the project. Bragg then spent an additional 2.5 hours reviewing and correcting the settlement documents. The clerk spent another 2 hours preparing the brief in support of class settlement and researching case law about approval of class settlements. Three days later, the clerk spent 5.7 hours continuing the same work. More time was spent on other activities related to the settlement.

Similarly, Bragg and his law clerk spent a total of 23.3

12

hours preparing a response to PSN's motion to dismiss. It appears from the entries that Bragg researched and prepared a response, using approximately 5 hours for the work, and then assigned the task to a law clerk who spent an additional 17.8 hours on the project. The billing records do not explain the need for so much additional time. The discovery project done in December of 1999 also included overlapping work by Bragg and his law clerk as indicated by the entry that Bragg rewrote the discovery drafts prepared by the clerk. To avoid compensation for duplicative or repetitive work, the clerks' time will be reduced by 10 hours.

The court concludes that the attorney's fees award for Seufert's representation will be calculated at a professional rate of $150 per hour. The time Seufert spent traveling will be compensated at $75 per hour. Seufert's professional time of 61.3 hours, compensated at $150 per hour, totals $9195.00. The travel time of 5 hours at $75 per hour totals $375.00. The attorney's fees to be awarded based on Seufert's billing records are $9720.00.

Bragg's fee of $300 per hour is reasonable for his professional work of 109.8 hours, which constitutes an award of $32,940.00 in fees. He will be compensated at $150 for his travel time of 29.4 hours for an award of $4,410.00. The clerks

13

will be compensated at a rate of $85 per hour for 74 hours, which totals $6,290.00.

PSN asks that the award be reduced, arguing that the plaintiffs were denied the equitable relief they originally sought and that their claimed violation of the FDCPA was merely technical. The court is not persuaded. Equitable relief was unnecessary because PSN voluntarily ceased sending the challenged letters after suit was brought. The plaintiffs are entitled to reasonable attorneys' fees pursuant to § 1692k(a)(3) and that amount is not to be reduced based on the amount of the plaintiffs' recovery or degree of their success. See, e.g., Evanauskas v. Strumpf, 2001 WL 777477, at *7 (D. Conn. June 27, 2001).

C. Supplemental Request for Fees and Costs

The plaintiffs also seek an award of fees for the time spent by Bragg and his law clerk in preparing the plaintiffs' motion for an award of fees and their reply to PSN's objection. Time spent in preparing an application for a fee award is compensable. See Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993). To the extent the work involved "little more than documenting what a lawyer did and why he or she did it, it may fairly be compensated at a reduced rate." Id. (internal quotation omitted). PSN has

14

not responded to the plaintiffs' supplemental declaration seeking additional fees and costs.

Bragg's billing records for the fee application process document that he spent 17.8 hours on the project and his law clerk spent 11.7 hours. He charges his professional rate of $300 per hour for the work, and $85 per hour for the law clerk. A review of the billing records indicates that some of the work was merely clerical, documenting billing time, while other work involved legal research and other professional activities. The law clerk appears to have spent 1.6 hours and Bragg spent .8 hours documenting billing time. That time will be compensated at a reduced rates of $25 per hour for the law clerk and $100 per hour for Bragg. Therefore, the total supplemental fees awarded are $6078.50.

D. <u>Costs and Expenses</u>

The plaintiffs' costs and litigation expenses, including the supplemental request, total $5,338.45. PSN has not objected to the costs and litigation expenses requested. Therefore, costs and litigation expenses are awarded in the amount of $5,338.45.

15

## Conclusion

For the foregoing reasons, the plaintiffs' motion for an award of costs, expenses, and attorneys' fees (document no. 55) is granted in that the defendant shall pay an award of attorneys' fees to the plaintiffs in the amount of $59,288.50 and costs and expenses in the amount of $5,338.45.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

December 12, 2001

cc:  Christopher J. Seufert, Esquire
     O. Randolph Bragg, Esquire
     Walter D. LeVine, Esquire
     Jeffrey D. Osburn, Esquire
     Daniel Duckett, Esquire

16