In re Rebecca Sue MOURER and Ronald Lee Mourer, Debtors.

Rebecca Sue Mourer and Ronald Lee Mourer, Plaintiffs,

v.

Equicredit Corporation of America, Defendant.

Bankruptcy No. SG 00–10103. Adversary No. 01–88196.

United States Bankruptcy Court, W.D. Michigan.

Aug. 23, 2004.

John A. Potter, Twohey Maggini PLC, Grand Rapids, MI, for Debtor.

Michael O. Nelson, Attorney at Law, Grand Rapids, MI, for Plaintiffs.

Arthur F. Radke, Richard E. Gottlieb, Dykema Gossett Rooks Pitts PLLC, Chicago, IL, Michael W. Donovan, Randall J. Groendyk, Varnum Riddering Schmidt & Howlett, Sarah E. Heineman, Dykema Gossett PLLC, Michael M. Malinowski, Attorney at Law, Grand Rapids, MI, for Defendant.

## OPINION AWARDING ATTORNEY FEES AND DENYING EQUICREDIT CORPORATION OF AMERICA'S MOTION FOR AN EXTENSION OF TIME FOR FILING AN APPEAL

JO ANN C. STEVENSON, Bankruptcy Judge.

This matter comes before the Court upon the Application for Attorney Fees and Costs submitted by Michael O. Nelson, attorney for the Debtor Plaintiffs (the Mourers) in an adversary proceeding

brought against Equicredit Corporation of America (Equicredit).

The request for fees presented in the context of this adversary proceeding arises in a case referred to this Court by the Standing Order of Reference entered by the United States District Court for the Western District of Michigan on July 24, 1984. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). Accordingly, the Bankruptcy Court is authorized to enter a final judgment subject to those appeal rights afforded by 28 U.S.C. § 158 and Fed. R. Bankr.P. 8001 et seq.

The following constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052. In reaching its determinations, this Court has considered the parties' briefs and oral arguments.

*Background of the Case*

On May 7, 2001, the Mourers filed a Complaint against Equicredit and Cascade Capital Funding, L.L.C. alleging various violations of the Truth In Lending Act (TILA), the Home Ownership and Equity Protection Act (HOEPA), and certain state law claims. After a trial, the Court issued an Opinion and Order ruling in favor of the Mourers, finding that Equicredit did indeed violate both TILA and HOEPA.

Equicredit appealed the Bankruptcy Court's Opinion and Order to the United States District Court on January 21, 2003. In its decision, the District Court affirmed in part and reversed in part the Bankruptcy Court's findings. It vacated the Bankruptcy Court's decision and remanded for entry of a new judgment, awarding relief to the Mourers based exclusively on the violation of the 12 C.F.R. § 226.17 disclosure requirements.

On April 14, 2004, the Bankruptcy Court issued an Order awarding the Mourers, $2,000.00 (the $2,000.00 Judgment), which was the maximum award allowed pursuant to 15 U.S.C. § 1640(2)(A)(iii) for Equicredit's violation of the disclosure requirements. There was no appeal of this decision.

On May 14, 2004, Michael O. Nelson (Nelson), the Mourers' attorney, filed an Application for Attorney Fees and Costs (Application) in the total amount of $17,234.91, arguing that as the prevailing party in a TILA action, the Mourers are entitled to an award of attorney fees and costs pursuant to 15 U.S.C. § 1640(a)(3), and that such an award is mandatory.

Equicredit objected to Nelson's Application and requested an extension of time for filing a notice of appeal of the $2,000.00 Judgment. It argued that the $2,000.00 Judgment did not provide for attorney fees; that the fees are not reasonably related to the work performed to obtain the $2,000.00 Judgment; and that Nelson failed to present the Court with evidence of actual time expended on the matter in which the Mourers prevailed. Should the Mourers prevail, Equicredit also requested leave to appeal the $2,000.00 Judgment and the grant of attorney fees.

*Analysis*

The TILA imposes mandatory disclosure requirements by those entities who extend credit to consumers. The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . ." 15 U.S.C. § 160(a).

Certain regulations have been designed to carry out the purpose of the TILA and they, among other things, mandate specific disclosures in credit transactions. See 15 U.S.C. § 1604 and 12 C.F.R. § 226.17. If

a creditor should fail to disclose any of the credit terms required under the TILA and its related regulations, a consumer may bring a civil action against the creditor under 15 U.S.C. § 1640.

■ Among its provisions, the TILA requires that when the consumer prevails in an action involving a close ended credit transaction secured by a dwelling, he or she may recover not less than $200.00 nor greater than $2,000.00. The purpose of the statutory recovery is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 399 (6th Cir. 1980).

■ The TILA also permits recovery of reasonable attorney fees and costs. 15 U.S.C. § 1640(a)(3). A plaintiff in a TILA case need not prove that he or she suffered actual monetary damage in order to recover the statutory damages and attorney's fees. *Watkins*, 618 F.2d at 399. Due to "the mandatory nature of the award of attorney's fees under TILA" and because the District Court held that Equicredit violated the Act, it is appropriate to consider the issue of attorney's fees. *Purtle v. Eldridge Auto Sales*, 91 F.3d 797, 802 (6th Cir.1996); See also *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 262, 95 S.Ct. 1612, 1624, 44 L.Ed.2d 141 (1975); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166 (7th Cir.1997).

■ The amount of attorney fees is not limited by the sum of the Mourers' recovery. *Purtle*, 91 F.3d at 802; *Sosa v. Fite*, 498 F.2d 114 (5th Cir.1974); *Smith v. Chapman*, 436 F.Supp. 58, 66 (W.D.Texas 1977). Even so, the Supreme Court has instructed that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, the Supreme Court also stated that the amount of the fee must be determined on the facts of each case.[1] *Hensley*, 461 U.S. at 429, 103 S.Ct. at 1937.

The initial point of inquiry to determine the right to attorney fees pursuant to 15 U.S.C. § 1640, is whether the plaintiff has brought a "successful action" under 15 U.S.C. § 1635. The standard for making this threshold determination has been formulated in various ways. The most generous of which is that plaintiffs are considered to be the prevailing party if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit. *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir.1978).

■ Here, the Mourers succeeded on their claim that before consummation of the transaction, full disclosure in writing was not made in a form they could keep as required by 12 C.F.R. § 226.17(a) and (b). The Mourers were ultimately awarded the

---

1. Although in *Hensley*, the issue of attorney's fees was brought in the context of the Civil Rights Attorney's Fees Award Act of 1976, the Supreme Court made clear that "It is intended that the amount of fees awarded ... be governed by the same standards which prevail in other types of equally complex Federal litigation ... and not be reduced because the rights involved may be nonpecuniary in nature. In computing the fee, counsel for a prevailing party should be paid, as is tradi- tional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 94–1011, p. 6 (1976), U.S.Code Cong. & Admin. News 1976, pp. 5908, 5913.

The Supreme Court also stated, "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933, 1939.

maximum amount of damages allowed by the statute on this claim. We find that success on this claim "brings the plaintiff ... across the statutory threshold." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Success is also measured by the degree of advancement of the principle behind the statute and the harm thwarted. See *Zagorski*, 128 F.3d at 1167.

Since the principle behind the TILA is to provide meaningful and proper disclosure of credit terms, the Mourers' success on the claim that they did not receive written disclosure terms prior to or even immediately after the closing is not to be seen as minimal. "The cumulative effect of [seemingly] petty violations ... may not be petty." *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir.1997). "The mere fact that the suit does not result in a large award of damages or the breaking of new ... ground is not a good ground for refusing to award attorney's fees." *Hyde*, 123 F.3d at 585.

In *Hensley*, after a thorough look at several cases cited in the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, and the enumeration of twelve factors[2] derived directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106, as found in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), the Supreme Court noted that "the legislative history does not provide a definitive answer as to the proper standard for setting a fee award where the plaintiff has achieved only limited success." *Hensley*, 461 U.S. at 431, 103 S.Ct. at 1938. Different courts of appeals however, have adopted varying standards for determining the relevance of the results obtained, to the amount of a fee award where the plaintiff did not succeed on all claims asserted.

Although some of these courts of appeals have found that plaintiffs should not recover fees for any work done on unsuccessful claims, the Sixth Circuit has stated that prevailing plaintiffs should generally receive a fee, even for hours expended on unsuccessful research or litigation, unless the positions asserted were frivolous or in bad faith. *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 636 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). There have been no allegations of bad faith or frivolity in this case. Consequently, it remains for us to determine what fee is reasonable and fair to everyone. We note that, "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." *Copeland v. Marshall*, 641 F.2d 880, 891 (C.A.D.C.1980) (en banc) (emphasis in original).[3]

The first, and simplest method for determining a reasonable fee is the "lodestar method" which takes the number of hours reasonably expended, multiplied by a reasonable hourly rate. "This calculation provides an objective basis on which to make an initial estimate of the value of

---

**2.** The twelve factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717–719.

**3.** At this point it should be noted that Equicredit alone, retained two law firms in this adversary proceeding, and was represented by five attorneys.

the lawyer's services." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

Attorney Nelson asserts that he spent 81.8 hours in preparation and litigation of the case. He charges $200.00 per hour, bringing his total amount of fees to $16,360.00.

The Supreme Court also instructs us to "exclude from this initial fee calculation, hours that were not reasonably expended." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. It cites such examples of overstaffing and the variance of lawyers' experience and expertise. This however, we find unnecessary, as Attorney Nelson is a sole practitioner and the only lawyer who worked on the case. Consequently, both the number of hours worked and the hourly fee charged appear reasonable.

■■■■ Once we have determined the initial fee amount, we must factor in the "results obtained." This is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley* 461 U.S. at 434, 103 S.Ct. at 1940. To aid in making this determination, the Supreme Court requires us to address two questions. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded; and second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for a fee award?

As to the first inquiry, the Mourers' two basic arguments involving TILA and HOEPA as it related to Equicredit, were that they did not receive the required disclosures pursuant to 15 U.S.C. § 1638, § 1639, and 12 C.F.R. § 226.32, and that they were entitled to rescind their agreement with Equicredit pursuant to 15 U.S.C. § 1635.

The Mourers prevailed on one of three claims regarding disclosure, where the remedy was a fine imposed by statute. They failed entirely to prevail on their claim requiring rescission. Notwithstanding this difference, we find that the actual claims, if not the remedies, brought in the lawsuit were inextricably intertwined. The TILA and HOEPA claims arise from the same set of facts and the same sequence of statutes. They involve a common core of facts and are based on related legal theories.

■■■■ In regard to the second question, the Mourers achieved only partial success. Although we have been told by the Sixth Circuit Court of Appeals that an attorney should receive a fee even for hours spent on unsuccessful claims, the Supreme Court has said that when there is limited success, the product of hours reasonably expended on the litigation as a whole multiplied by a reasonable hourly rate may be excessive. "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941.

■■■■ Even though the statute does not provide for an excessive fine when the creditor falls short of the proper disclosure requirements, this is not a reflection of the importance of the principle violated. Because the purpose of the act is meaningful disclosure of credit terms and informed decision making on the part of the consumer, we believe Congress meant to implement the TILA through individual actions. Therefore, in order to encourage counsel to undertake TILA actions, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. "Paying counsel in [TILA] cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce

the [TILA] through private actions, and therefore misapplies the law." *Tolentino v. Friedman,* 46 F.3d 645, 653 (7th Cir. 1995) cert. denied, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995).

■ We are also required to scrutinize the actual Application for evidence supporting the hours worked and the rates claimed. "Where the documentation of hours is inadequate, the . . . court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

Attorney Nelson's Application is not necessarily inadequate, but it lacks the detail that is normally found and is commonplace in bankruptcy.[4] Although separate entries are made listing various activities, it is unclear what the subject of these activities were. For example, there are numerous entries regarding legal research and drafting of pleadings but it is unclear exactly what legal question was researched or which pleadings were drafted. We know however, that work of this kind was done in this case.

■ When all is said and done, "There is no precise rule or formula for making [reasonable attorney fee] determinations. The . . . court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley,* 461 U.S. at 436–437, 103 S.Ct. at 1941.

■ Therefore, taking into account the limited success of the litigation, the reasonableness of the time expended and the hourly fee charged, the quest for advancement of the principles of the statute, its remedial nature, the harm prevented, and the lack of detail in the Application, we award attorney fees to Attorney Nelson in the amount of $12,270.00, plus costs in full of $874.91, for a total of $13,144.91.

■ Equicredit requests an extension of time to file an appeal of the $2,000.00 Judgment, stating that its failure to do so timely is excusable. Fed.R.Bankr.P. 8002 provides that upon expiration of the time for filing the notice of appeal, the bankruptcy judge may extend the time for filing the notice of appeal for a period not to exceed twenty days, if a request is made within that twenty day period and there is a "showing of excusable neglect." Fed. R.Bankr.P. 8002(c)(2).

In this case, the $2,000.00 Judgment was filed on April 16, 2004. The Motion to Extend Time was filed on May 17, 2004. The twenty day extension period expired on May 16, 2004. Consequently, the Motion to Extend Time was not timely filed. However, we note that Equicredit's decision not to file an appeal of the $2,000 Judgment was admittedly intentional and conscious, based on financial considerations. See *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (Authorizing relief in cases where the failure was the result of

---

4. The overriding concern behind the requirement of detailed fee applications in bankruptcy is conservation of the estate. Through the Bankruptcy Reform Act, Congress sought to repudiate a series of judicial decisions which set an arbitrary limit on fees in a quest to preserve the estate. However, detailed fee applications are required to enable the bankruptcy court to fulfill its obligation to examine carefully the requested compensation in order to ensure that the claimed expenses are justified. Pursuant to 11 U.S.C. § 330, "the compensation is to be reasonable, for economy in administration is the basic objective." S.Rep. No. 989, 95th Cong., 2d Sess. 40–41 (1978). We note however, that Attorney Nelson's was not appointed by the Bankruptcy Court and his fees will not be paid by the bankruptcy estate.

excusable neglect, not as to incidents where neglect is excusable in light of current knowledge); *In re F/S Communications Corp.*, 59 B.R. 824 (Bankr.N.D.Ga. 1986) (Strict standard of excusable neglect applies to motions to extend time for filing appeal under Fed. R. Bankr.P. 8002).

Equicredit had notice of the appeal period. It also had notice that pursuant to the TILA, the award of attorney fees to the prevailing party was mandatory. Therefore, we find there is ample basis to deny the Motion to Extend Time for Filing an Appeal of the $2000.00 Judgment. Equicredit's untimely filing of the request to extend the time to file the appeal, coupled with its intentional decision to forego its appeal rights, and its notice of the law, enforce this conclusion. As stated earlier however, this Opinion and Order Awarding Attorney Fees is subject to all appeal rights afforded by 28 U.S.C. § 158 and Fed. R. Bankr.P. 8001 et. seq.