Arsenia **TOLENTINO**, Plaintiff–Appellee and Cross–Appellant,

v.

Lawrence **FRIEDMAN**, Defendant–Appellant and Cross–Appellee.

Nos. 94–1998, 94–2103.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1994.

Decided Jan. 31, 1995.

Daniel A. Edelman (argued), Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, Michelle A. Weinberg and O. Randolph Bragg, Edelman & Combs, Chicago, IL, for plaintiff.

Richard J. Sorman, Rieck & Crotty; Dennis A. Marks, Michael Resis, Michael S. Loeffler (argued), Thomas C. Kaufmann, and Andrew S. Nadolna, Querrey & Harrow, Chicago, IL, for defendant.

Before COFFEY, PRATT,* and FLAUM, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

### FACTS AND BACKGROUND

In this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692–1692*o* ("FDCPA"), the parties cross-appeal from a judgment entered in the United States District Court, Northern District of Illinois, *Judge* Charles R. Norgle, Sr. Friedman's appeal challenges the determination of liability and claims the attorney's fees awarded to plaintiff were excessive; Tolentino's cross-appeal claims that the attorney's fees awarded to her were inadequate.

Friedman is a practicing attorney in Chicago, Illinois; his practice involves debt collection on behalf of creditors. After a creditor hires him to collect a debt, Friedman begins pre-litigation communication with the debtor in an attempt to collect the sum owed. These attempts normally include written correspondence.

In 1992 Citicorp National Services ("Citibank") employed Friedman to collect an alleged deficiency on an auto loan owed by Tolentino. As part of his pre-litigation communication, Friedman sent a letter to Tolentino in the following form:

> 19 South LaSalle Street
> Tenth Floor
> Chicago Illinois 60603

Law Offices
Lawrence Friedman
RE:
Amount claimed:
Account number:

Please be advised that I have been retained by the above named, to represent them in their claim against you.

Be further advised that I have been instructed to initiate all necessary action in the enforcement of this claim, but before doing so, I am giving you this opportunity to pay this indebtedness without the necessity of filing suit.

If, however, I do not hear from you I may have no alternative but to commence legal action against you, which will greatly increase the amount due thereunder, by the addition of court costs and attorney fees, where applicable.

Unless you the recipient of this notice, within thirty days after receipt dispute validity of this debt or any portion thereof, the debt will be assumed to be valid.

If you notify the office of the undersigned, in writing within the thirty day period of the debt, or any portion there is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification of judgment will be mailed to you by the undersigned.

Upon your written request within the thirty day period, this office will provide you with the name and address of the original creditor if different from the current creditor.

This letter is an attempt to collect a debt and any information obtained may be used for that purpose.

> Very Truly Yours,
> Lawrence Friedman

* The Honorable George C. Pratt, United States Circuit Judge for the Second Circuit, sitting by designation.

Written in at the beginning of the letter were the name of the creditor, Citibank; the amount of the debt; and the identity of the debtor Tolentino, and her account number.

When Tolentino still did not pay the debt, Friedman, on behalf of Citibank, filed a suit against her on September 4, 1992, in Cook County Circuit Court. After delivery of the summons and complaint to the sheriff, but before process had been served, Friedman mailed to Tolentino a "courtesy copy" of the documents in an envelope bearing the return address of Friedman's law firm. In the envelope, separately folded, he included an additional document. That document, which gives rise to this lawsuit, read as follows:

### IMPORTANT NOTICE

In the next few days it is likely that you will receive mail from lawyers recommending that the only way you can clean up your financial affairs is to file BANKRUPTCY, and that you employ that lawyer to represent you.

As you know CREDIT is extremely important in this day and age. Filing bankruptcy is not necessarily the end to your financial problems. It might cause more problems than it solves. Bankruptcy may also involve COSTS to you such as filing, trustee and attorney fees.

Your failure to pay this indebtedness to this creditor has prompted the filing of this legal proceeding against you. Though this action is unfortunate, it does not hinder your ability to discuss the payment of this debt on terms that everyone can live with.

Please contact this office to discuss a repayment arrangement in line with your financial situation. Please note that this office only represents the creditor and we cannot represent your interests in this matter.

Law Offices
LAWRENCE FRIEDMAN—03532
19 S. LaSalle Street
10th Floor
Chicago, IL 60603
(312) 977–8000

No other documents were included in the envelope.

Tolentino brought this action against Friedman seeking damages in the United States District Court for the Northern District of Illinois, for violations of the Fair Debt Collection Practice Act, 15 U.S.C. § 1692. Both Tolentino and Friedman moved for summary judgment. Tolentino claimed that Friedman, acting as a debt collector, violated the FDCPA, specifically 15 U.S.C. § 1692e, by mailing to her the "IMPORTANT NOTICE". Friedman claimed that the "IMPORTANT NOTICE" was part of his litigation efforts and therefore not covered by the FDCPA, but that in any event he had not violated the act.

The district court rejected his litigation-effort defense and ruled that the "notice" had violated subsections (9), (10), (11), and (13) of § 1692e, which read in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt * * * The following conduct is a violation of this section:

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued or approved by any court, official, or agency of the United States, or which creates a false impression as to its source, authorization or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) [T]he failure to disclose clearly in all communications made to collect a debt ... that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

\*　　\*　　\*　　\*　　\*　　\*

(13) The false representation that documents are legal process.

The district court found that the "IMPORTANT NOTICE" had violated all of these provisions, because:

Friedman's Notice deceptively and misleadingly impresses upon its readers the belief that, because a lawsuit has been

filed, they are now in a dire situation in which bankruptcy may appear to be the only available option. * * * Last, the Notice fails to disclose clearly that Friedman is attempting to collect a debt by this mailing and does not state that the information obtained will be used for that purpose. *See* 15 U.S.C. § 1692e(11).

*Tolentino v. Friedman,* 833 F.Supp. 697, 700–01 (N.D.Ill.1993).

The district court entered judgment in favor of Tolentino for $1,000, the maximum amount of individual damages permitted by the statute, under § 1692k(a)(3), as well as $553.43 costs, and $10,132.50 attorney's fees.

Friedman appeals and Tolentino cross-appeals.

## DISCUSSION

### A. *Summary Judgment.*

■ This court reviews a district court's grant of summary judgment *de novo. Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.,* 40 F.3d 146, 150 (7th Cir.1994). In determining whether summary judgment is appropriate, all evidence and all inferences that can be drawn from the evidence are viewed in a light most favorable to the nonmoving party. *Id.* Summary judgment is not granted unless there are no triable issues. *Bechtold v. Physicians Health Plan of Northern Indiana, Inc.,* 28 F.3d 666, 671 (7th Cir.1994).

On the main appeal, Friedman claims (1) that the FDCPA is not applicable to his "Important Notice", because he sent it as an attorney involved in the litigation phase of collecting debts for Citibank; (2) that his status as a lawyer distinguishes him from a debt-collector, who is always subject to the provisions of the FDCPA; (3) that the "IMPORTANT NOTICE" was simply a "follow-up" letter to which the disclosure requirements of § 1692e(11) do not apply; and (4) that an average consumer would have no difficulty recognizing that the "IMPORTANT NOTICE" is not a court document but simply a communication from Citibank's counsel. *See Green v. Hocking,* 9 F.3d 18 (6th Cir.1993); *Pressley v. Capital Credit &*

*Collection Service,* 760 F.2d 922 (9th Cir. 1985).

Friedman also contends that the attorney's fees awarded by the district court were duplicative and excessive and that the district court, in awarding them, abused its discretion. Tolentino argues on the cross-appeal that the district court abused its discretion by awarding attorney's fees at less than the prevailing market rate.

■ Friedman has stipulated that he is a debt collector within the meaning of the FDCPA. His principal contention is that once he started the litigation, the act no longer applied to him. Our review, therefore, hinges, in large measure, on whether or not Friedman, in his capacity as lawyer involved in debt collection, is subject to the FDCPA after litigation has commenced. *Jenkins v. Heintz,* 25 F.3d 536 (7th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 416, 130 L.Ed.2d 332 (1994), specifically addressed this question. There, the district court held that congress did not intend to regulate normal legal proceedings under the FDCPA; however, we reversed. We noted that the FDCPA in § 1692a(6) regulates the activities of a debt collector, which is defined as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect directly or indirectly, debts owed or due or asserted to be owed or due another.

*Jenkins,* 25 F.3d at 538. We specifically concluded:

> Nothing in this definition hints that attorneys in the course of litigation should be excluded. Therefore, if a plaintiff can demonstrate that an attorney fits within the rubrics of the statutory definition of "debt collector", then that attorney's conduct is regulated.

Since Friedman has stipulated that he is a "debt collector" within the meaning of the act, *Jenkins* requires us to hold that his conduct, even during the course of litigation, is regulated. *Id.*

Friedman's reliance on *Green v. Hocking*, 9 F.3d 18 (6th Cir.1993), which held that the filing of a complaint for collection of a debt was the practice of law and not subject to the FDCPA, is misplaced, because *Green* is not the law in this circuit; we are bound by *Jenkins*. Of course, the Supreme Court has now granted certiorari in *Jenkins* and may ultimately determine this issue differently. If and when that happens, Friedman may still have suitable remedies available from any change the Supreme Court may make in the rule.

■ We turn then to consider whether Friedman's "IMPORTANT NOTICE" subjects him to liability under § 1692e, which was enacted "to prevent 'abusive, deceptive, and unfair debt collection practices'". *Piptiles v. Credit Bureau of Lockport*, 886 F.2d 22, 27 (2d Cir.1989) (citations omitted). Section 1692e first provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt". Then, "without limiting the general application of the foregoing", it describes in 16 subsections specific conduct that violates the statute.

Subsection (11) seeks to prevent communications from a debt collector that appear to be official communications, rather than attempts to collect a debt. Friedman's "IMPORTANT NOTICE" clearly violated the plain language of this subsection, which provides:

> (11) * * * the failure to disclose clearly in all communications * * * that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

15 U.S.C. § 1692e(11).

While Friedman's pre-litigation letter did contain the warning required by subsection (11), it is undisputed that the warning was not repeated in the "IMPORTANT NOTICE", and that the omission was not inadvertent.

■ Friedman contends that the debt collection warning is not required in follow-up letters because they are not "communications" covered by FDCPA. He relies on *Pressley v. Capital Credit & Collection Service Inc.*, 760 F.2d 922 (9th Cir.1985), where the ninth circuit held "that the follow up notice sent in this case is not a 'communication' within which the disclosure required by 15 U.S.C. § 1692(e)(11) must be made". *Id.* at 925.

We disagree with that conclusion and hold that subsection (11) applies to "*all* communications made to collect a debt * * * *" (emphasis added). The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium". 15 U.S.C. § 1692a(2). While Friedman's "IMPORTANT NOTICE", which obviously relates to the alleged debt, states, "Please contact this office to discuss a repayment arrangement * * *", Friedman nevertheless failed to write on the "IMPORTANT NOTICE" that he was attempting to collect Tolentino's debt and that any information provided would be used for that purpose. He therefore violated the subsection.

Several courts of appeals have also rejected the *Pressley* decision and held that the debt collection warning must be contained in "all" communications. The second circuit held that the balancing analysis applied in *Pressley* is precluded by clear statutory language. *Piptiles*, 886 F.2d at 26–27. The court elaborated:

> First, in providing that "all communications" contain the required disclosures, Congress appears to have precluded the "balancing" suggested in *Pressley*. Were balancing undertaken, allowing certain communications to omit the disclosures, the clear and unambiguous language "*all* communications" would effectively be changed to "*some* communications." Second, it is apparent that the prescribed requirement can further the Congressional purpose in enacting the FDCPA in 1977, which was to prevent "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692 (1982). In fact, this case demonstrates the utility of the statute. By requiring disclosure in all communications, Congress has ensured that even if the first letter is not received by the consumer, as Pipiles claims occurred here, subsequent notices will nonetheless provide the con-

sumer with the requisite disclosure. Third, even if there were little discernible purpose in repetition, Congress could exercise its legislative judgment to adopt a reasonable margin of safety to insure its remedial goal. We are not at liberty to substitute a view different from that expressed by Congress in the legislative enactment.

Similarly in *Carroll v. Wolpoff & Abramson*, 961 F.2d 459 (4th Cir.1992), the fourth circuit stated

> In our view, the language "all communications" in section 1692e(11) is clear and unambiguous. It makes no distinction between initial and subsequent communications * * * * Consumers sometimes do not receive first notices, and thus follow-up letters may often provide them with their first notice of the debt collection process. In our view, it follows that requiring the disclosure requirements of Section 1692e(11) in the follow-up letters furthers congressional intent to prevent the abuse of debtors.

*Carroll*, 961 F.2d at 461.

The third and sixth circuits have also followed the second circuit in rejecting *Pressley*. *See Dutton v. Wolpoff & Abramson*, 5 F.3d 649 (3d Cir.1993); *Frey v. Gangwish*, 970 F.2d 1516 (6th Cir.1992).

We agree that the language of the statute is clear and we, too, reject the ninth circuit's position as expressed in *Pressley*. We therefore affirm the summary judgment based on Friedman's violation of § 1692e(11).

While we have serious reservations as to whether summary judgment is appropriate as to subsections (9), (10), and (13), because of triable issues that are presented there, we need not address those issues, since we are affirming summary judgment based on subsection (11), and, in the circumstances of this appeal, it does not matter whether the same notice contained additional violations.

■ In awarding damages when an action is brought by an individual under the FDCPA, the court is to award actual damages plus "such additional damages as the court may allow, but not exceeding $1,000 * * * *" 15 U.S.C. § 1692k(a)(1), (a)(2)(A).

As the district court noted, Tolentino has suffered no actual damages and sought only statutory damages. In assessing whether part or all of the $1,000 statutory damages shall be awarded, the court generally is to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional * * * * *" *Id.* at § 1692k(b)(1). No such assessment was necessary here, however, because Friedman did not contest the maximum amount in response to the motion for judgment, nor did he claim that his noncompliance was unintentional and the result of a bona fide error within the meaning of 15 U.S.C. § 1692c. The effect of Friedman's position in the district court means that since summary judgment against him on subsection (11) was proper, the award of $1,000 must be affirmed, and there is no need to consider the possible violations of the other subsections.

### B. *Attorney's Fees.*

■ The FDCPA provides for an award of costs and attorney's fees to the successful consumer.

> [A]ny debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of—
>
> * * * * * *
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a). The statutory language makes an award of fees mandatory. "Because the FDCPA was violated * * * the statute requires the award of costs and a reasonable attorney's fee * * * *" *Pipiles*, 886 F.2d at 28.

The reason for mandatory fees is that congress chose a "private attorney general" approach to assume enforcement of the FDCPA.

> Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the act mandates an award of attorney's

fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.

*Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir.1991).

"Unlike most private tort litigants, [a plaintiff who brings an FDCPA action] seeks to vindicate important * * * rights that cannot be valued solely in monetary terms", *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), and congress has determined that the public as a whole has an interest in the vindication of the statutory rights. *Id.*

The district court found that Tolentino's counsel normally received rates of $275 per hour for Mr. Edelman and $225 per hour for Combs. The record shows that other courts have awarded fees at those rates in similar types of cases. However, Judge Norgle held that these rates should be reduced in FDCPA cases because

[f]ew paying clients would be inclined to pay voluntarily an hourly rate of $275 to seek damages not exceeding $1,000 * * * There is no dispute in the right case and under the appropriate circumstances, counsel for plaintiff's fee would be reasonable at the rate of $275 hourly, as indicated in counsel's supplemental affidavit. But not in this case, as the court has previously ruled.

The Supreme Court has explained the calculation for an award of attorney's fees:

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

■ There are several factors that a court should consider when calculating attorney's fees, including (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to accep-

tance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 441, 103 S.Ct. at 1943–44.

The Supreme Court has also stated:

"[T]he degree of the plaintiff's overall success goes to the reasonableness" of a fee award under *Hensley v. Eckerhart.* Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley.*

*Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992).

■ Tolentino contends that the district court abused its discretion by not awarding attorney's fees at her normal hourly rate. Tolentino does not, however, object to the reduction in the number of hours expended. Friedman, on the other hand, claims that the district court's award of fees was excessive.

In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993),

Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services.

The Third Circuit has similarly stated:

Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the

congressional policy of redressing public interest claims will be vindicated. *Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F.2d 1436, 1449 (3d Cir.1988).

Here, Tolentino prevailed on summary judgment, thereby protecting her rights under the statute, and has recovered the maximum statutory damages allowed to an individual plaintiff. Under *Farrar,* therefore, Tolentino has obtained a high degree of success.

■ Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law. *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 562–63 (7th Cir.1994).

## CONCLUSION

The summary judgment that the "IMPORTANT NOTICE" violated § 1692e(11) of the FDCPA is affirmed. Plaintiff is entitled to statutory damages of $1,000 plus $553.43 in costs. The district court's award of attorney's fees is reversed and the case is remanded to the district court to fix an appropriate attorney's fees award in light of this opinion.