NOT DESIGNATED FOR PUBLICATION

No. 120,680

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

Douglas K. Richardson and Mary K. Richardson,
*Appellants*,

v.

Marilyn K. Murray and Paul E. Murray,
*Appellees*.


MEMORANDUM OPINION

Appeal from Johnson District Court; Rhonda K. Mason, judge. Opinion filed August 14, 2020.
Affirmed.

*Gregory P. Goheen*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants.

*Mark B. Schaffer*, of Schaffer & Morton, Chtd., of Overland Park, for appellees.


Before Buser, P.J., Atcheson, J., and Walker, S.J.


Buser, J.: This is an appeal of the district court's ruling awarding attorney fees to
Mary K. and Douglas K. Richardson who obtained a judgment against Marilyn K. and
Paul E. Murray in a lawsuit involving the sale of the Murrays' residence. The
Richardsons appeal the district court's decision to deny attorney fees for the Kansas
Consumer Protection Act (KCPA) claim. They also appeal the district court's calculation
and amount of its award of attorney fees for the breach of contract claim. Upon our
review, we find no abuse of discretion by the district court and, therefore, affirm its
ruling.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, the Richardsons purchased a home in Overland Park, Kansas, from the Murrays. After the sale, the Richardsons had water intrusion in their basement. On July 28, 2014, the Richardsons filed an eight-count petition seeking damages against the Murrays primarily based on numerous inaccuracies in the real estate disclosure statement. These claims included breach of contract, fraudulent misrepresentation, violation of the KCPA, gross and wanton negligence, negligence, negligent misrepresentation, fraud by omission, and breach of implied duty of good faith and fair dealing.

On October 9, 2015, the Murrays submitted an offer of judgment in the amount of $30,000 which the Richardsons accepted on October 15, 2015. The district court entered judgment for the Richardsons for $30,000 on October 20, 2015.

The Richardsons filed an application for attorney fees and expenses in prosecuting the lawsuit. The district court granted the Richardsons $3,598.80 in court costs but denied their request for attorney fees and expenses. The Richardsons appealed to the Court of Appeals contending the district court erred in its denial of attorney fees and expenses.

On appeal, our court reversed the district court's ruling and remanded with directions for the district court to revisit the attorney fees issue. We directed the district court:

> "(1) to determine in its discretion whether the Richardsons should receive an award of attorney fees for pursuing the merits of their KCPA claim and, if the court determines that they should receive an award, to award a reasonable amount and (2) to award a reasonable amount of attorney fees incurred by the Richardsons as a result of pursuing the merits of their breach of contract claim. In making any determination regarding reasonableness, the district court shall consider all of the relevant factors set forth in [the

2

Kansas Rules of Professional Conduct] KRPC 1.5 (a)." *Richardson v. Murray*, 54 Kan. App. 2d 571, 589-90, 402 P.3d 588 (2017), *rev. denied* 307 Kan. 988 (2018).

On remand, the Richardsons offered itemized billing statements memorializing the law firm's time, billing rate, and descriptions of the legal services rendered during the litigation. The Richardsons' attorneys also provided a copy of the employment agreement with their clients for the district court's in camera review. Initially, the Richardsons sought $141,972.50 in attorney fees and expenses related to the 599.4 hours spent working on the case.

The Murrays responded that attorney fees should not be awarded for the KCPA claim because it constituted only a minor claim in the litigation as reflected in the billing statement. Moreover, the Murrays argued that the requested fees in general were excessive and duplicative, especially given the fact that the litigation settled for $30,000.

The Richardsons acknowledged that 4.5 hours out of the entire billing statement was duplicative and agreed it should be stricken from the request. They also agreed that one task which required 43.6 hours was excessive and the fee should be reduced by half. Ultimately, the Richardsons modified their request to $107,682.50.

The district court granted the motion for attorney fees in part and denied it in part. The district court found that no attorney fees should be awarded regarding the KCPA claim but ordered the Murrays to pay $8,712.40 in attorney fees to the Richardsons for their legal work on the breach of contract claim.

The Richardsons filed a timely notice of appeal.

On appeal, the Richardsons contend the district court "erred by concluding that the Plaintiffs were not entitled to an attorney fee award under the KCPA." In particular, the Richardsons allege that the district court's reason for not awarding attorney fees under the KCPA was contrary to the law and the facts. In response, the Murrays contend the district court's decision to deny attorney fees was reasonable given that the KCPA does not mandate an attorney fee award, and the Richardsons did not actively pursue the KCPA claim.

Our standard of review provides:  "On appeal, we review both a district court's determination of the reasonableness of requested attorney fees and the actual award of attorney fees under an abuse of discretion standard." *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 558, 419 P.3d 608 (2018), *rev. denied* 308 Kan. 1595 (2018). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Consolver v. Hotze*, 306 Kan. 561, 568-69, 395 P.3d 405 (2017).

In the prior appeal regarding attorney fees, our court held that the KCPA "provides the court with discretion to award reasonable attorney fees to a prevailing party when a supplier has violated the KCPA and the action has been terminated by judgment." *Richardson*, 54 Kan. App. 2d 571, Syl. ¶ 3. Accordingly, our court remanded the KCPA attorney fees request to the district court with directions "to determine in its discretion whether the Richardsons should receive an award of attorney fees for pursuing the merits of their KCPA claim and, if the court determines that they should receive an award, to award a reasonable amount." 54 Kan. App. 2d at 589-90.

On remand, in denying the Richardsons' request for KCPA attorney fees, the district judge ruled:

4

"In considering the pleadings, affidavits, calculation of time, the Kansas Rules of Professional Conduct, arguments by counsel, the Court looked at the KCPA claim and I looked at the billing and it was not separated out by claim, and like defense had pointed out, the Court could only see where there were approximately 5.4 hours in regards to this KCPA claim.

"While the plaintiffs were perceived as the prevailing party in this matter, the Court does not see where this KCPA claim was a significant part of the case considering that there was only 5.4 hours billed for it and so in the Court's discretion the Court is not going to grant attorneys' fees in regards to the KCPA claim."

At the outset, we disagree with the Richardsons' premise that the district court found the plaintiffs "were not *entitled* to an attorney fee award under the KCPA." (Emphasis added.) Based on our review of the district court's ruling on remand, it is apparent that—consistent with our prior opinion and remand—the district court understood that Kansas law permits a court to award attorney fees in appropriate KCPA cases. Thus, the Richardsons were *entitled* to attorney fees provided, in the district court's discretion, the fees claimed were appropriate and reasonable. The district court did not abuse its discretion by basing its ruling on an error of law. See *Consolver*, 306 Kan. at 568-69.

Under the KCPA, "the idea that one violation *may* constitute grounds for a fee award does not equate to the idea that such fees *must* be awarded." *Louisburg Building. & Development Co. v. Albright*, 45 Kan. App. 2d 618, 652-53, 252 P.3d 597 (2011). The KCPA provides that an award of attorney fees should be "limited to the work reasonably performed." K.S.A. 50-634(e).

The district court's discretionary ruling to not award attorney fees for prosecution of the KCPA claim is supported by the factual record. The Richardsons' billing statement had only two entries that referenced the KCPA claim. The first entry, dated September 21, 2015, occurred almost 14 months after the inception of the litigation, and about one

5

month prior to the Richardsons' acceptance of the Murrays' offer of judgment. This entry for 3.3 hours was for an associate attorney to conduct an "[a]nalysis of Kansas case law regarding claims of fraud and claims under the Kansas Consumer Protection Act in preparation of drafting response to defendant's motion for summary judgment."

The second entry, dated October 13, 2015, occurred four days after the Murrays made the offer of judgment and two days before the Richardsons accepted it—effectively ending the litigation. This entry was for 1.5 hours for "[a]nalysis of Kansas case law *regarding an award of attorney's fees* under the KCPA." (Emphasis added.)

The KCPA claim was predicated on a stand-alone statutory basis that has, over the years, engendered a large, discrete body of caselaw. Inexplicably, nowhere in the billing statement was there any reference to the KCPA, its statutory provisions, or caselaw unique to this act, until at or very near the conclusion of the litigation. The district court appropriately noted this lack of significance to the prosecution of the Richardsons' lawsuit as shown in the limited number of hours recorded. It is also noteworthy that one of the two billing entries related to recovery of attorney fees at the time the litigation was concluding.

Moreover, as the Murrays argue, the Richardsons did not pursue written or deposition discovery on issues unique to a KCPA claim. And on appeal, the Richardsons do not refute the Murrays' assertion that the KCPA claim was an insignificant part of their cause of action. In summary, the totality of facts, including the limited number of hours specifically expended for the KCPA claim, support the district court's exercise of discretion in finding the KCPA claim was not such a significant part of the Richardsons' lawsuit that it justified an award of attorney fees.

Finally, as a general rule, "[w]here several causes of action are joined and only some of them permit the award of attorney fees, the work on several causes must be

6

segregated in determining an attorney fee award." *DeSpiegelaere v. Killion*, 24 Kan. App. 2d 542, 549, 947 P.2d 1039 (1997). Moreover, "if counsel have made no attempt in their time records to segregate their time as to different causes of action that are not mutual in their facts and impossible of segregation, it could well be that a court could find a failure of proof and award no attorney fees." 24 Kan. App. 2d at 549.

The Richardsons claim that their lack of segregating time entries for the KCPA claim is because the claim is "based on the same common set of facts as their other claims and all legal work performed was necessarily intertwined." In this regard, our court has stated:

> "'An exception to the duty of a prevailing party's attorney to segregate work on several causes of action arises when the attorney fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.'" *Werdann v. Mel Hambelton Ford, Inc.*, 32 Kan. App. 2d 118, 132, 79 P.3d 1081 (2003) (quoting *DeSpiegelaere*, 24 Kan. App. 2d 542, Syl. ¶ 2).

The Richardsons assert that the KCPA time entries were incapable of being segregated from legal work performed on the other claims, and their multiple causes of action were "necessarily intertwined." However, other entries in the billing statement were segregated. For example, one entry read: "Preparation of Fraud by Silence section of cause of action memo." Despite the Richardsons' assertion that they were justified in failing to segregate the KCPA entries, and that the claims were necessarily intertwined, there is no support in the record to prove this assertion.

By way of contrast, in two cases wherein our Supreme Court found an exception to the general rule requiring segregation of claims, there was expert testimony presented in support of the plaintiffs' claims for KCPA attorney fees. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1203-04, 221 P.3d 1130 (2009) (Attorney expert "expressed doubts about

whether it would be possible to segregate the time spent on the warranty claims from the time spent on the KCPA claims. . . . The district court order was based on the expert testimony that it heard and its understanding of the nature of the claims presented in the case."); *York v. InTrust Bank, N.A.*, 265 Kan. 271, 308, 962 P.2d 405 (1998) (Attorney expert testified that the KCPA claim involved core set of facts shared with other claims and presented alternative methods for calculating the amount of attorney fees for work attributable to the KCPA claim.). On appeal, unlike *Unruh* and *York*, the Richardsons did not provide any evidence or substantive argumentation in support of their mere assertion that the KCPA claim derived from a core set of facts and that segregation of attorney fees was not possible.

For all the reasons discussed, we are persuaded that the district court did not abuse its discretion in declining to award attorney fees to the Richardsons on their KCPA claim.

THE AMOUNT OF ATTORNEY FEES AWARDED ON THE BREACH OF CONTRACT CLAIM

Regarding the breach of contract claim for attorney fees, the Richardsons present two arguments. First, they contend the district court erred as a matter of law by using the wrong legal standard to determine the appropriate amount of fees. Second, they assert that evidence supports a finding that the district court should have awarded the entire amount requested rather than a percentage of the judgment obtained. In response, the Murrays argue the district court explicitly relied on the KRPC 1.5(a) (2019 Kan. S. Ct. R. 300) factors as directed by this court's remand. As a result, the Murrays contend the attorney fees award is reasonable.

In our remand order, we directed the district court

"to award a reasonable amount of attorney fees incurred by the Richardsons as a result of
pursuing the merits of their breach of contract claim. In making any determination

8

regarding reasonableness, the district court shall consider all of the relevant factors set forth in KRPC 1.5 (a)." *Richardson*, 54 Kan. App. 2d at 589-90.

The Richardsons posit that the "presumptively reasonable amount of any attorney fee award is normally calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate—a calculation referred to as the lodestar." They complain that the district court erred as a matter of law because it "did not ultimately analyze, utilize, or even calculate, the [l]odestar in determining the amount of fees to be awarded to Plaintiffs." The Richardsons argue that the eight factors set forth in KRPC 1.5(a) "are used to separately determine whether the hourly rate is reasonable and whether the hours are reasonable."

The Richardsons do not favor us with any Kansas precedent that mandates a district court must first determine a lodestar and then apply the eight factors to evaluate the reasonableness of that amount. We are unaware of any such precedent.

On the other hand, our court has stated: "District judges are experts on attorney fees and must use [KRPC] 1.5(a) . . . as the methodology to assess the reasonableness of any request for attorney fees." *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, Syl. ¶ 8, 235 P.3d 515 (2010). We have also observed that a "'district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Citizens Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, 1133, 284 P.3d 348 (2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 103 S. Ct. 1933, 76 L. Ed. 2d 40 [1983]).

Moreover, "[i]mportantly, our courts recognize that in awarding attorney fees, the law requires consideration of all relevant factors, not merely time spent multiplied by an hourly rate." *Claiborne v. Galemore*, No. 105,929, 2012 WL 1650160, at *3 (Kan. App. 2012) (unpublished opinion). Finally, "'[a] general reduction of hours claimed in order to

achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.'" *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (quoting *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 [10th Cir.1994] and *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 [10th Cir. 1986]).

In summary, neither Kansas law nor our remand order required the district court to employ a lodestar methodology in determining the appropriate amount of attorney fees in this litigation. The district court did not err as a matter of law by not establishing a lodestar. Rather, the district court properly analyzed the amount of attorney fees sought by the Richardsons by following the dictates of KRPC 1.5(a).

Under KRPC 1.5(a), the district court evaluates the reasonableness of an attorney fee award by considering the following eight factors:

"(1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent."

In the assessment of attorney fees, a district court should consider each of the factors. Our Supreme Court has stated that in applying these eight factors, no one factor is to dominate "the other seven, *i.e.*, that one creates a presumption that controls unless

10

and until it is rebutted by the others, whether solely or collectively." *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 951, 135 P.3d 1127 (2006).

In a detailed explanation of its award of attorney fees, the district judge stated:

"Turning to the breach of contract claim, this is the claim in which the appellate court instructed the District Court to make a reasonable—to award a reasonable amount of attorneys' fees, and again, the Court looked at the pleadings, affidavits, the calculation of time, the Kansas Rules of Professional Conduct and as well as the attorney—the arguments made by the attorneys on the matter.

"And while the Court considered all eight factors of the Kansas Rules of Professional Conduct 1.5(a), there were some that stood out in particular in making a decision in this matter. One, the time and labor required, the novelty and difficulty of the questions involved and the skill requested to perform the legal service properly.

"This was not a derivative suit or what we would deem as complex litigation. This was a case in which a home was sold and there were claims of breach of contract and so it wasn't a novelty case or anything complex and so the Court doesn't deem this as a complex litigation; this is something that did not require a specialty field. . . .

"The Court also looked at the likelihood . . . that the acceptance of a particular employment would preclude other employment; again, this is not a complex litigation case. This case was not such that the attorney was required to obligate himself only to this particular case and so the Court looked at that, the amount involved and the results obtained.

"It is my understanding that the offer of judgment was for $30,000. We have attorneys' fees in the amount of . . .

. . . .

"$141,972.50. I will say that that amount in comparison to the amount recovered is shocking. I don't know what more to say than that is pretty shocking for this type of case and the amount that was recovered. The attorneys' fees involved just . . . do not align with the amount that was recovered and so, again, the Court believes that it's disproportionate. And based on that, normally the Court will consider a (indiscernible) calculation in determining what is a reasonable amount, but the Court has chosen to do a general reduction and one of the reasons for that general reduction is . . . I'll take No. 3 and No. 7

11

of the KRPC 1.5(a) into consideration, one, which is the fees customarily charged and the locality as well as the experience and reputation and ability of the attorneys.

"I read through the billing in this matter and there were over 20 pages of billing and so while the Court went through and marked a lot of things, that was asking the Court to go through line by line and make a decision to reduce hours, but more so, the Court requested the agreement between plaintiffs' counsel and the plaintiffs in this matter, and I will tell you that in looking at the engagement contract, the Court was concerned.

"In the engagement contract with the Richardsons, the hourly rate for partners that was given to the plaintiffs was $250 an hour. The billing indicates that the hourly rate for a partner was $375. The hourly rate in the contract for associates was $175. In looking at the billings, the associate was $225. The legal assistant's hourly rate in the contract was $110. In the billing statement provided to the Court it was [$]150. So the engagement contract with the plaintiffs was dated October 16th, 2013. The billing statement provided to the Court begins in July of 2013. And right from the very beginning it says [$]375 so nowhere in this billing statement does the Court see the $250, the $175 an hour or the $110 an hour for the partner, associate and the legal assistant. And so, again, the Court is not going to go through over 20 pages of billing to reduce all of that, but they're not consistent and that's another reason for the general reduction.

"The Court further finds that the agreement entered into by the plaintiffs with their counsel was, in fact, a contingency agreement and in that agreement, if this matter is settled before trial, the attorneys' fee would be 33 percent of the net recovery. If the matter proceeded to trial, then the plaintiffs' counsel would receive 40 percent of any recovery.

"Attorneys' fees were awarded for the purpose of a client not having to pay those fees. The simple fact that those fees have been transferred to the opposing party to pay is not reason enough for a full-on increase. This matter was settled for $30,000. It is highly unlikely that the plaintiffs in this matter would have been asked to pay $141,972.50 and the Court is not going to order the defense to pay that either.

"What the Court is going to do is to keep in line with the contingency agreement, and the Court will award attorneys' fees which were 33 percent of the recovery, which, the Court, in reviewing this, understood that the—the court costs, the contingency fee, all courts costs are paid first and then whatever is left, that's what the 33 percent will be based on and it's my understanding that the defendant has already paid in this matter the court costs. . . .

12

....

"So what the Court did is it subtracted the $3,598.80 from the 30,000 which came to $26,401.20, 33 percent of that is $8,712.40 and that is the amount of attorneys' fees that will be awarded to the plaintiffs in this matter, and so that is the ruling of the Court."

As detailed above, it is apparent the district court followed our instructions on remand. Moreover, we find substantial competent evidence to support the district court's findings relative to the eight factors listed in KRPC 1.5(a).

Regarding the first factor, this was not a complex case, but a garden-variety breach of a real estate contract case primarily based on several alleged inaccuracies in the real estate disclosure statement. Although the Richardsons claim there is no support for this finding, our review of the record confirms it. Moreover, the Richardsons fail to point out any complexities or novel legal issues in this litigation.

As to the second factor, once again, the lack of complexity in this litigation should not have precluded the Robinsons' attorney from obtaining additional clients due to the length and difficulty of this litigation. Indeed, this litigation lasted only about 15 months which supports a finding that it should not have prevented counsel from working with other clients on other litigation. We are not persuaded by the Richardsons' argument that hours spent on this litigation necessarily were hours that counsel could not spend on other matters. If that were the standard, this factor would, in every case, favor litigants seeking attorney fees. Rather, this factor relates to work which "will preclude other employment." KRPC 1.5(a). Given that this litigation was a straight-forward breach of contract case regarding a residential real estate sale, the Richardsons' attorneys have not shown how this representation prevented them from engaging in other legal employment.

As to the third and seventh factors (which the district court considered together) the district court reviewed in camera the employment agreement between the

13

Richardsons and their attorneys. As explained by the district court, it was concerned about the discrepancies in the agreement which listed fees at a markedly lower rate for partners, associates, and paralegals than the rates for the same legal professionals as reflected in the billing statements. These discrepancies raised questions regarding whether the reduced fee schedules listed in the engagement letter, rather than the increased fee schedules submitted by the Richardsons for payment by the Murrays, accurately reflected the fees applicable to the case and customarily charged in the locality. Moreover, these discrepancies presented the district court with a daunting task of possibly revising downward—item by item—the appropriate legal fees.

The fifth and sixth factors of KRPC 1.5(a) were not mentioned by the district court in its ruling and do not appear relevant to the assessment of attorney fees in this case.

The fourth factor—the amount involved, and the results obtained—clearly influenced the district court's assessment of the attorney fees award. The district court considered the claim of $141,972.50 in attorney fees compared to the settlement amount of $30,000 to be "shocking." Although not mentioned by the district court, we also note that in the Richardsons' response to the Murrays' request for a statement of monetary damages, the plaintiffs sought $410,000 in economic damages, a total of $500,000 in non-economic damages, and a stated intention to seek punitive damages. Compared to the amount of damages claimed, which was very significant, the ultimate settlement amount was considerably less. Given these circumstances, we agree with the district court that the claimed attorney fees were disproportionate to the amount recovered for the Richardsons.

The eighth factor, whether the fee is fixed or contingent, also played an important role in the district court's assessment of the amount of attorney fees. After the district court reviewed the terms of the Richardsons' engagement letter, it found that it provided for attorney fees in the amount of 33% of a settlement amount. Applying the terms of the

14

contingent fee agreement, the district court awarded attorney fees in the amount of $8,712.40.

Our Supreme Court has upheld attorney fee awards based on contingent fee agreements. In *Hawkins v. Dennis*, 258 Kan. 329, 350, 905 P.2d 678 (1995), the district court did not explain how it calculated the attorney fee award. On appeal, our Supreme Court found the award to be excessive and ordered attorney fees in an amount equal to 40% of the judgment obtained. In making this assessment, the Supreme Court considered the 40% contingent fee agreement, the amount recovered by the plaintiff, and the time expended in the litigation. 258 Kan. at 349-50.

In summary, "[t]he district court is considered an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining the value of the services rendered." *Unruh*, 289 Kan. at 1204. The district court faithfully adhered to our remand instructions by applying the eight factors set forth in KRPC 1.5(a) in determining the reasonable amount of attorney fees in this case. Additionally, the district court's findings on each of the relevant factors were supported by substantial competent evidence. "If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." 289 Kan. at 1202. We find no error in the district court's exercise of judicial discretion.

Affirmed.

***

ATCHESON, J., concurring: I concur in the narrow result in this case affirming the Johnson County District Court's order granting Plaintiffs Douglas K. and Mary K. Richardson $8,712.40 in attorney fees based on their acceptance of an offer of judgment from Defendants Marilyn K. and Paul E. Murray. The dollar amount represents a defensible award under the circumstances. But that is the product of happenstance. The

15

method the district court used to arrive at the award in this peculiar case is itself sufficiently peculiar that I prefer not to go along for the ride as my colleagues have done.

In the very short version of this litigation, the Murrays sold their home to the Richardsons. And in the lawyer-speak of this case, the Richardsons experienced "water intrusion" in the basement. The Richardsons sued the Murrays because they ostensibly knew about the leaky foundation and made contrary representations in the disclosure documents that formed part of the basis for the sale. The Richardsons unleashed a pack of legal theories: breach of contract, various torts grounded in negligent and intentional conduct, and a violation of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 et seq. During what appears to have been a barbed litigation process, the Richardsons filed a formal statement of damages for $410,000 in economic harm and $500,000 in noneconomic injuries. Eventually, the Murrays made an offer of judgment of $30,000, as provided in K.S.A. 60-2002(b); the Richardsons accepted.

The offer and acceptance triggered a new dispute over the Richardsons' right to recover attorney fees from the Murrays. In an earlier appeal, this court resolved the underlying legal issue, finding that the offer and acceptance effectively made the Richardsons prevailing parties on their claims against the Murrays and, in turn, obligated the Murrays to pay the Richardsons' attorney fees in conformity with the KCPA, K.S.A. 50-634(e), and the real estate contract. *Richardson v. Murray*, 54 Kan. App. 2d 571, 573, 402 P.3d 588 (2017) (*Richardson I*). The court then remanded this case to the district court to determine what attorney fees were due the Richardsons. 54 Kan. App. 2d at 589-90. We have the Richardsons' appeal from that determination in front of us.

*Attorney Fees under KCPA*

Under K.S.A. 50-634(e), a district court *may* award reasonable attorney fees to a consumer successfully litigating a KCPA claim. The opinion in *Richardson I* found that

16

the Richardsons were successful in their KCPA claim against the Murrays by virtue of the acceptance of the offer of judgment. 54 Kan. App. 2d at 582. Although that seems to be the correct effect of the acceptance of the offer of judgment, the outcome creates a legal anomaly. Based on the appellate record, the Richardsons could not have won their KCPA claim against the Murrays because the Murrays were not "suppliers" within the meaning of the Act and the sale of their home was not a covered "consumer transaction." See K.S.A. 2019 Supp. 50-624(c) (defining "consumer transaction"); K.S.A. 2019 Supp. 50-624(1) (defining "supplier"). Only suppliers engaging in consumer transactions may violate the KCPA. See K.S.A. 2019 Supp. 50-626(a); K.S.A. 50-627(a); K.S.A. 50-639. Given the decidedly odd legal fiction in this case—the Murrays were legally accountable for a violation of the KCPA even though they could not have violated the Act—the district court would have acted within the discretion afforded under K.S.A. 50-634(e) to deny attorney fees on the claim. K.S.A. 50-634(e) ("court may award to the prevailing party reasonable attorney fees").

The statutory provision allowing a prevailing plaintiff to recover attorney fees under the KCPA serves an important public policy: The availability of a fee award ought to encourage a lawyer to pursue a claim for an individual victim even when the claim entails comparatively limited financial losses that would otherwise make the litigation economically unrewarding. Without the fee incentive for private lawyers, suppliers of relatively inexpensive services or products could trade in misleading representations and shoddy goods knowing the Kansas Attorney General and local district or county attorneys lack the resources to handle a high volume of KCPA violations. In that way, the fee award allows lawyers to act as private attorneys general to attack and root out the deceptive and unconscionable practices prohibited in the KCPA. Their success benefits the individual victims but also tends to deter suppliers' wrongful conduct in the first instance. But this litigation didn't advance the policies behind the KCPA, since the transaction wasn't covered. The established framework for determining attorney fee

17

awards under public interest statutes would have appropriately accommodated the anomaly of the Richardsons' judgment on their legally empty KCPA claim.

Federal courts typically use the lodestar method to calculate reasonable attorney fees when a statute shifts a prevailing party's fees to the losing party. See *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (outlining lodestar method). Like the KCPA, many of those statutes permit fee awards to encourage private attorney enforcement of measures enacted for the public good. See, e.g., *Washington v. Philadelphia Cty. Ct. Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir. 1996) (attorney fee award under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.); *Tolentino v. Friedman*, 46 F.3d 645, 652-53 (7th Cir. 1995) (attorney fee award under Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et, seq,); *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 974 (4th Cir. 1987) (attorney fee award under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.). A lodestar calculation applies a reasonable hourly rate for legal work in the geographical area to a reasonable number of hours for the litigation to arrive at a presumptively reasonable statutory award. See *Burlington v. Dague,* 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992) (lodestar presumptively yields reasonable and appropriate fee); *Hensley*, 461 U.S. at 433.

In a given case, a court may adjust the lodestar amount to account for litigation inefficiencies, such as excessive lawyer conferences or elementary legal research. *Hensley*, 461 U.S. at 434; *West v. AK Steel Corp. Ret. Accumulation Pension*, 657 F. Supp. 2d 914, 928 (S.D. Ohio 2009) (disallowing excessive time junior lawyer spent researching basic legal principles). Likewise, a court may reduce a presumptive award for a substantial lack of success on the merits. See *Farrar v. Hobby*, 506 U.S. 103, 114-15, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1164-65 (11th Cir. 2017). The reduction may take into account the amount of damages sought compared to the amount actually recovered, although applying that ratio as a rote measure to reduce an attorney fee request should be avoided as unduly

18

mechanical and, thus, improper. *Farrar*, 506 U.S. at 114-15; *Yellow Pages Photos*, 846 F.3d at 1164.

In consumer litigation, however, a fully successful plaintiff may realize a relatively small financial recovery—comparable to the amount actually sought—given the nature of the claim. A request for statutory attorney fees should not be reduced for that reason, since the plaintiff prevailed and vindicated the public policies behind the statutory scheme. In that circumstance, an entirely appropriate attorney fee award may be substantially greater than the damages recovered.

Those are sound principles, and there is no good reason to discard them in fashioning an attorney fee award under the KCPA or other state statutes shifting fees to encourage private enforcement of legislation protecting public interests. See, e.g., K.S.A. 22-4611 (recognizing private cause of action, including recovery of reasonable attorney fee, for "racial or other biased-based policing"); K.S.A. 44-1021 (recognizing private cause of action, including recovery of reasonable attorney fee, to remedy unlawful housing discrimination). An initial lodestar computation would be subject to adjustment based on the factors outlined in KRPC 1.5(a) (2019 Kan. S. Ct. R. 300) for determining the overall reasonableness of an attorney fee. See *Citizens Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, 1126-27, 284 P.3d 348 (2012) (upholding attorney fee award in utility rate case based on lodestar and KRPC 1.5[a]).

Here, as set out in the majority opinion, the Richardsons' lawyers submitted a motion for $141,972 in attorney fees and supported their request with affidavits and lengthy billing statements. The Murrays opposed the request. And the lawyers representing the Richardsons trimmed the request to $107,682, acknowledging some of the time spent was either excessive for the tasks performed or duplicative.

19

The district court reviewed the time records and found only 5.4 hours expressly attributed to the KCPA claim. On that basis, the district court declined to award any fees on the claim because it wasn't "a significant part of the case." The district court failed to articulate a valid reason for granting no fees at all on the KCPA claim. A district court would not be justified in denying any award to a prevailing plaintiff simply because a statutory cause of action allowing attorney fees might be considered a secondary, tertiary, or even a less significant part of a multifaceted civil action. The amount of time spent on the claim might be small—as it appeared to be here—and that would limit the fee award to those hours fairly attributable to the claim. The amount, in turn, presumably would reflect a fraction of the attorney fees the case generated. Here, the Richardsons would have been entitled to a presumptive lodestar award on the KCPA claims for the 5.4 hours. That the claim was simply a minor one in the overall litigation doesn't justify a refusal to allow *some* attorney fees. The conclusion is inconsistent with the governing legal framework and seems to be arbitrary, resulting in an abuse of judicial discretion.

But the district court reasonably could have found that the Richardsons achieved nothing more than a nominal victory on their KCPA claim and, then, only because it was brought in conjunction with the claims for breach of the real estate contract and for various forms of tortious misrepresentation. In other words, the KCPA claim was essentially meritless as a freestanding cause of action. So we may fairly conclude the $30,000 would have changed hands regardless of the KCPA claim. The lack of merit and of anything more than a veneer of success would have justified a denial of a fee award under the permissive language in K.S.A. 50-634(e). See *Farrar*, 506 U.S. at 115-16 (party receiving nominal damages in civil rights action permitting recovery of attorney fees but failing to prove any monetary injury despite a multimillion dollar claim properly denied award for fees).[1]

[1]On appeal, the Richardsons' lawyers argued the district court erred both in denying them any fees on KCPA claim and in determining only 5.4 hours of attorney time should be attributed to the claim. They argued the KCPA claim was sufficiently

20

"intertwined" with their other claims that much of the discovery and other pretrial work was integral to all of them and, therefore, was compensable under the KCPA. This court has recognized that when a plaintiff has combined a KCPA claim with other claims arising out of a common occurrence, attorney fees may be awarded for work intertwined in advancing those claims, although the other claims would not permit shifting attorney fees to the losing party. *DeSpiegelaere v. Killion*, 24 Kan. App. 2d 542, Syl. ¶ 1, 947 P.2d 1039 (1997). The burden is on the party seeking fees to show the interlocking character of the legal work. The Richardsons' lawyers have not done so in the materials they submitted in support of their fee request. Many of the time entries identify only generically stated tasks, and nothing specifically describes the work common to the KCPA claims and any of the other claims. Even if the Richardsons were entitled to some fee award on the KCPA claim, it would be substantially circumscribed by those limitations and presumably would be based on hours comparable to what the district court recognized as explicitly attributed to the claim.

*Attorney Fees under Real Estate Contract*

Consistent with the remand in *Richardson I*, the district court also considered and made its award of attorney fees under the real estate contract. The contract included a provision altering the customary American rule that each party bears its own attorney fees and required the loser to pay the winner's reasonable attorney fees in any litigation over a breach of the agreement. Parties to a contract generally may agree to a loser-pays obligation, so long as the term has been fairly negotiated in an arms-length bargain. But such an agreement carries with it none of the positive public policy attributes of statutory attorney fee awards in consumer or civil rights litigation.

Here, the term shifting attorney fees to the loser explicitly applied to remedying a default under the real estate contract and wouldn't, then, obviously govern the tort claims or the putative KCPA violation. The question is how to determine a reasonable attorney fee for purposes of that contractual term. Here, again, the lodestar method provides a sound baseline by considering a reasonable rate for lawyer services in the market and a reasonable time to perform the necessary work. Using a lodestar calculation as a foundation for a "reasonable" contractual fee award comports with KRCP 1.5(a),

21

especially since two of the factors are "fees customarily charged in the locality for similar services" and "the time and labor required" to do the work. Those considerations largely replicate the backbone of the lodestar method. The initial lodestar calculation then can and should be adjusted, as necessary, to accommodate the remaining factors in KRPC 1.5(a). One of those factors is "the amount involved and the result obtained," a consideration tied up with success on the merits. KRPC 1.5(a)(4)[2]

[2]A district court would not be justified in relying on KRPC 1.5(a)(4) to reduce a statutory fee award under a private attorney provision because a fully successful outcome yielded a relative small financial recovery for the plaintiff in comparison to the lodestar calculation of the fees. See *Cooper v. Great Mileage Rides, Inc.*, No. 105,184, 2012 WL 1072758, at *3 (Kan. App. 2012) (unpublished opinion) (attorney fee award under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.). As I have explained, the point of the statutory award is to encourage private lawyers to litigate those kinds of civil rights and consumer claims for aggrieved victims and, more broadly, to discourage the proscribed conduct.

Here, the Richardsons accepted the $30,000 offer of judgment from the Murrays, despite their earlier assertion in the litigation that their economic damages were $410,000. Their putative economic damages ought to roughly reflect how they valued their breach of contract claim, since those claims typically do not permit the recovery of noneconomic damages. In their attorney fee request, the Richardsons sought $141,972.50 and later reduced the amount to $107,682.50. The Richardsons' lawyers calculated the requests based on their representation of reasonable hourly rates and the work shown in their billing statements. The request, however, did not identify time spent on the breach of contract claims either independent of or intertwined with the tort claims. So some of the time may well have advanced the tort claims alone and would not be compensable under the contractual fee-shift provision. And their asserted lodestar amount would be subject to revision consistent with KRPC 1.5(a).

The district court, however, took an entirely different tack in considering what would constitute a reasonable attorney fee under the real estate contract. The district court

turned to the contract the Richardsons entered into with the lawyers representing them in this litigation. That contract was produced to the district court but is not part of the record on appeal. Based on the district court's ruling, we know the contract called for the lawyers to receive 33 percent of any recovery they obtained on behalf of the Richardsons on a contingent basis. If the Richardsons recovered nothing, they would owe their lawyers nothing. Apparently, however, the contract between the lawyers and the Richardsons recited hourly rates for the legal work—rates that were lower than those the lawyers used in calculating the fee request they submitted to the district court. The district court never explained what the purpose the hourly rates were to serve in the retainer contract between the Richardsons and their lawyers, so we don't know.

The district court noted that the $30,000 offer of judgment included court costs and expenses. To arrive at a "reasonable" attorney fee award the Murrays would owe the Richardsons, the district court subtracted costs and expenses of $3,598.80 from the $30,000 and then applied the 33 percent contingent fee from the retainer contract, yielding an award of $8,712.40.

I fail to see why the terms of the contract the Richardsons made with their lawyers should inform—let alone dictate—what would constitute a reasonable attorney fee under the earlier real estate contract between the Richardsons and the Murrays. I doubt one party agreeing to jettison the American rule in favor of a loser-pays provision in a typical sales contract or a business contract contemplates its potential liability will be driven by whatever sort of agreement the other party might later make for legal representation in the event of a dispute devolving into a court battle.

And I consider the purchase of a home to be a sufficiently costly and personally important undertaking that the parties typically would give the transaction more than passing thought. Although someone without legal training might not grasp the full implications of a loser-pays clause, that doesn't turn it into an anything-goes clause.

23

Absent come specific language otherwise, a reasonable attorney fee contemplated in a real estate contract or other sales or commercial agreements would be one grounded in the well-known hourly fee compensation model for legal services. See, e.g., *Baratta v. Valley Oak Homeowners' Ass'n.*, 928 So. 2d 495, 497 (Fla. Dist. Ct. App. 2006) (recognizing "lodestar approach" as proper calculation of attorney fees under contractual provision); *Litton Industries, Inc. v. IMO Industries, Inc.*, 200 N.J. 372, 385-86, 982 A.2d 420 (2009) (recognizing lodestar method for calculating reasonable attorney fees under contract clause, incorporating consideration of success on the merits); *Ring v. Carriage House Condominium Owners' Ass'n.*, 198 Vt. 109, 120, 112 A.3d 754 (2014) (lodestar method appropriately used to determine attorney fees under "contractual provisions"); see also Schleppenbach, *Winning the Battle But Losing the War: Towards a More Consistent Approach to Prevailing Party Fee Shifting in the Contractual Context*, 12 Fla. A & M U. L. Rev. 185, 208-09 (2017) (noting "courts often multiply the number of hours reasonably expended by the lawyer's reasonable hourly rate" in making a fee award under a contractual clause and adjust the resulting amount for factors like those in KRPC 1.5[a] and "lack of complete success").

I realize the Kansas Supreme Court has recognized that a contingent fee provision in a contract between a lawyer and a client to pursue a personal injury action may be used to determine reasonable compensation due the lawyer when the client terminates the relationship before the claim has been resolved. See *Consolver v. Hotze*, 306 Kan. 561, 570-71, 395 P.3d 405 (2017). The rule of *Consolver* would likely govern a dispute between the Richardsons and their lawyers about compensation due under *their* contract. But that arrangement couldn't have had a bearing on the contractual understanding of the Richardsons and the Murrays months earlier when they agreed to the home sale.

The district court should have started with a lodestar calculation to determine attorney fees under the real estate contract. Even crediting outright the lodestar determination the Richardsons' lawyers presented, the fee request was for $107,682.50,

24

adjusted downward from $141,972.50. But that amount properly ought to be tempered by the Richardsons' comparative lack of success. Two complementary measures suggest a significant reduction in the fee request would be appropriate. The Richardsons identified $410,000 in economic damages that would approximate their harm as a result of the purported breach of the real estate contract; yet they accepted a $30,000 settlement for all of their claims, including various torts. Second, consistent with KRPC 1.5(a)(4), the amount involved turned out to be $30,000—a recovery dwarfed by the attorney fee request. And that is an entirely relevant factor in judicially fashioning a reasonable fee award under a contractual agreement of the parties.

Taking all of that into account, the award of $8,712.40 could be easily justified and came well within the broad range of discretion accorded district courts in these matters. For that reason, I am comfortable affirming the award itself, although the district court's approach in computing the amount was off the mark. See *State v. Smith*, 309 Kan. 977, 986, 441 P.3d 1041 (2019) (district court may be affirmed if right for wrong reason).